United States Courts
Southern District of Texas
ENTERED

JUN 1 9 2006

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES D. LAIR, III               §
                                 §
          Plaintiff,             §
                                 §
v.                               §          CIVIL NO. H-05-2307
                                 §
JO ANNE B. BARNHART,             §
COMMISSIONER OF THE              §
SOCIAL SECURITY ADMINISTRATION,  §
                                 §
          Defendant.             §

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 15), and Defendant's Motion for Summary Judgment (Docket Entry No. 16).  The court has considered the motions, all relevant filings, and the applicable law.  The court has reviewed the entire case history.  For the reasons set forth below, the court **GRANTS** Plaintiff's summary judgment motion and **DENIES** Defendant's summary judgment motion.

### I.  Case Background

**A.  Procedural History**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") on Plaintiff's claim for Supplemental Security Income benefits under Title XVI of the Social Security Act ("the

---

[1]      The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 8-10.

Act").[2]

Plaintiff filed a claim for Supplemental Security Income on December 10, 2001, alleging disability that began December 31, 1995.[3] Plaintiff claimed he was disabled by headaches, a learning disability, knee pain and stiffness, a heart murmur, and dizzy spells.[4]

The Commissioner denied Plaintiff's claim at the initial application[5] and reconsideration levels.[6] The Commissioner found that Plaintiff's condition was "not severe enough to keep [Plaintiff] from working."[7] Plaintiff requested a hearing,[8] before an Administrative Law Judge of the Social Security Administration ("ALJ"), which was granted;[9] and the hearing was conducted on November 21, 2002, in Houston, Texas.[10] After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on December 17,

---

[2]     Plaintiff's Original Complaint, Docket Entry No. 1, p. 1.

[3]     Transcript of the Administrative Proceedings ("Tr.") 70.

[4]     Tr. 31, 45, 50.

[5]     Tr. 40.

[6]     Tr. 48.

[7]     Tr. 45.

[8]     Tr. 51.

[9]     Tr. 55.

[10]    Tr. 30.

2002.[11]  The ALJ found Plaintiff was not disabled as defined in the Social Security Act at any time through the date of the decision.[12] On April 15, 2005, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner.[13]

## B.  **Factual History**

Plaintiff was born on April 15, 1972, and was twenty-three years old on the date of the alleged onset of disability.[14] Plaintiff graduated from high school, where he was enrolled in special education courses.[15]  He had "no vocationally relevant past work experience."[16]

### 1. **Physical Examinations**

Plaintiff's medical records consisted of a physical exam and several psychological evaluations. Donald Gibson, II, M.D., ("Dr. Gibson") performed a physical examination on March 6, 2002.[17]  Dr. Gibson's   report   concluded   that   Plaintiff   suffered   from

---

[11]    Tr. 27.

[12]    Tr. 35.

[13]    Tr. 4.

[14]    Tr. 70.

[15]    Tr. 111, 122, 128, 135, 174-75.

[16]    Tr. 31, 185-86.

[17]    Tr. 132.

3

posttraumatic headaches,[18] knee pain, and a learning disability.[19] While Dr. Gibson recommended an orthopedic evaluation of the knee, he noted that no abnormalities were revealed by an X-ray of the knee.[20]

A Physical Residual Functional Capacity Assessment form was completed by John R. Wiley, M.D., ("Dr. Wiley") on March 28, 2002, and the assessment was reviewed and affirmed by Scott D. Spoor, M.D., on June 17, 2002.[21] Dr. Wiley found exertional limitations of occasionally lifting and/or carrying not more than 50 pounds, frequently lifting and/or carrying not more than 25 pounds, standing and/or walking no more than a total of six hours in an eight-hour work day, and sitting no more than a total of six hours in an eight-hour work day.[22] Dr. Wiley recited findings from the record and concluded "limitations as alleged are not supported by [evidence on record]."[23]

## 2. Psychological Evaluations

The first psychological evaluation was performed by David M.

---

[18]   Tr. 132. The record mentions Plaintiff's history of a head injury, but does not indicate its significance. The court finds that the issue is not relevant to the decision.

[19]   Tr. 134.

[20]   Id.

[21]   Tr. 167.

[22]   Tr. 161.

[23]   Tr. 166.

McLendon, Ph.D., ("Dr. McLendon") on May 27, 1992.[24] Plaintiff had a Verbal Intelligence Quotient ("IQ") score of 75, a Performance IQ score of 76, and a Full Scale IQ score of 74, each within the borderline range on the Weschler Adult Intelligence Scale - Revised ("WAIS-R").[25] Plaintiff's Wide Range Achievement Test - Revised ("WRAT-R") scores for reading, spelling, and arithmetic were each below the first percentile and indicated a "retarded level of development."[26] Dr. McLendon further indicated that Plaintiff is illiterate, and that Plaintiff's borderline intellectual functioning is a "pervasive restriction that affects and undermines all areas of his functioning."[27] Plaintiff had a poor short-term memory, and "a very poor level of attention, concentration, and freedom from distractibility."[28]

On October 17, 2000, Plaintiff was examined by Tomas G. Soto, Ed.D., and Ted Jolly, a psychologist.[29] Plaintiff scored a Verbal IQ of 73, a Performance IQ of 67, and a Full Scale IQ of 68 on the WAIS-R.[30] Plaintiff underwent WRAT-R testing, and the results

---

[24]   Tr. 121.

[25]   Tr. 122.

[26]   Tr. 123.

[27]   Id.

[28]   Tr. 122.

[29]   Tr. 127.

[30]   Id.

5

indicated "academic skills are severely retarded and depressed."[31] Results were again below the first percentile in the reading, spelling, and arithmetic areas. Examiners observed that "his working pace was slow and inconsistent."[32] They noted that "he is the kind of person who tries to stay close to what is familiar and obvious and, when circumstances or demands become difficult, he will tend to withdraw and re-direct intellectual and emotional energies in childish behavior or day dreaming."[33]

Sheila A. Jenkins, Ph.D., ("Dr. Jenkins") examined Plaintiff on March 12, 2002.[34] The medical record indicates that Plaintiff's Verbal IQ was 69 ("intellectually deficient"), Performance IQ was 70 ("borderline"), and Full Scale IQ was 68 ("intellectually deficient") on the WAIS-R.[35] Plaintiff again scored below the first percentile in the reading, spelling, and arithmetic areas of the WRAT-R.[36] Comparing Plaintiff's intelligence scores with the results of the WRAT-R, Dr. Jenkins found that the inconsistency "indicates that [Plaintiff] has a reading and math disability."[37] Dr. Jenkins' "evaluation of [Plaintiff's] cognitive processes

[31]   Tr. 129.

[32]   Tr. 127.

[33]   Tr. 130.

[34]   Tr. 135.

[35]   Tr. 137.

[36]   Tr. 138.

[37]   Id.

indicated that the claimant's attention and concentration skills were mildly impaired."[38]

A Mental Residual Functional Capacity Assessment form dated March 19, 2002, was completed by Henry M. Hanna, Ph.D., ("Dr. Hanna"), and was reviewed and affirmed as written by Stephen D. Drake, Ph.D., ("Dr. Drake") on June 15, 2002.[39] In the Functional Capacity Assessment section of the form, Dr. Hanna wrote, "claimant [is] able to understand, remember, and carry out simple instructions, interact with others, and respond to change."[40] In the Summary Conclusions section, Dr. Hanna indicated, by checking the box for "Moderately Limited", that there were limitations on Plaintiff's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to make simple work-related decisions, and ability to perform in several other areas.[41]

Dr. Hanna also completed a Psychiatric Review Technique Form, which was also affirmed by Dr. Drake.[42] The form indicated that the

---

[38]    Tr. 137.

[39]    Tr. 141, 143.

[40]    Tr. 143.

[41]    Tr. 141-42.

[42]    Tr. 145.

analysis was based upon Listing[43] 12.05, Mental Retardation.[44] Dr. Hanna found "a medically determinable impairment [to be] present that does not precisely satisfy the diagnostic criteria" in the Listing.[45] Dr. Hanna found borderline intellectual functioning and a learning disability.[46] In the Rating of Functional Limitations section, Dr. Hanna rated the degree of limitation as moderate for two items: 1) "restriction of activities of daily living" due to illiteracy, and 2) "difficulties in maintaining concentration, persistence, or pace."[47] Handwritten comments at the end of the assessment indicated "alleged limitations caused by [Plaintiff's symptoms] supported by [available] evidence."[48]

### 3. Hearing Testimony

At the hearing, Plaintiff testified that he was thirty years old, completed high school, and took special education classes.[49] Plaintiff indicated that he did not read at home, and had never worked anywhere for more than one month.[50] Plaintiff's mother, Edna

---

[43]    "The Listings" or "Listing" refers to impairments listed in Appendix 1 of the Social Security Act regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[44]    Tr. 145.

[45]    Tr. 149.

[46]    Id.

[47]    Tr. 155.

[48]    Tr. 159.

[49]    Tr. 171.

[50]    Id.

Lair ("Mrs. Lair"), testified that Plaintiff was born prematurely,[51] was the youngest of her six children,[52] and was the slowest of those children to develop.[53]  Mrs. Lair then testified as to unsuccessful attempts to find employment for Plaintiff.[54]  She also testified that he spent his day watching TV, "sleep[ing] a lot," doing "little chores,"[55] and occasionally playing basketball down the street.[56]  Mrs. Lair also agreed that her son was "the type of child you have to constantly remind him to do something."[57]

The ALJ heard testimony[58] from a vocational expert, Norman Hooge, Ph.D., ("VE").[59]  The VE testified that, although Plaintiff lacked a past work history,[60] there were a sufficient number of jobs Plaintiff could do in the regional or national economy.[61]

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner

---

[51]    Tr. 173.

[52]    Tr. 174.

[53]    Id.

[54]    Tr. 175-78.

[55]    Tr. 184.

[56]    Id.

[57]    Tr. 178.

[58]    Tr. 187.

[59]    Tr. 68.

[60]    Tr. 186.

[61]    Id.

9

denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

## A.   Substantial Evidence

The widely-accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." Id. The Commissioner has the responsibility of deciding any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.   Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown, 192 F.3d at 496.  In other words, the court is to defer to the decision of the Commissioner as much

10

as is possible without making its review meaningless.   Id.

## B.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).   Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial
> gainful activity, will not be found to be disabled no
> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless he has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to an impairment listed in [the Listings] will
> be considered disabled without the need to consider
> vocational factors; (4) a claimant who is capable of
> performing work that he has done in the past must be
> found "not disabled;" and (5) if the claimant is unable

11

> to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. §§ 404.1520, 416.920. By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth. Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.

The Commissioner can satisfy her burden either by reliance upon the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). A defective hypothetical may produce reversible error:

> Unless the hypothetical question posed to the vocational expert can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at

236.

## III.  Analysis

### A.  ALJ's Findings

The ALJ found that Plaintiff "had not engaged in substantial gainful activity since the alleged onset."[62]  The ALJ also found that Plaintiff's "borderline intellectual functioning is a severe impairment," but  "does not meet or medically equal one of the listed impairments."[63]  The ALJ found Plaintiff's "allegations regarding his limitations [to be] not totally credible for the reasons set forth in the body of the decision."[64]  The ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to "stand or walk six hours in an eight-hour day and sit for six hours in an eight-hour day with normal breaks."[65]  He found an exertional limitation of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently.[66]  Finally, the ALJ found that Plaintiff was "capable of remembering, understanding, and carrying out simple, one-to-two step tasks."[67]  The ALJ concluded, based upon the testimony of the VE, that Plaintiff was not disabled since

---

[62]     Tr. 35.

[63]     Tr. 35.

[64]     Id.  It is unclear from the body of the decision why the credibility of Plaintiff was questioned. However, the credibility evaluation of Plaintiff's testimony is not necessary to review the issues raised.

[65]     Id.

[66]     Id.

[67]     Id.

13

Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy."[68]

## B. **Mental Retardation**

Plaintiff argues that the ALJ erred in classifying Plaintiff's condition as borderline intellectual functioning instead of mental retardation,[69] and failing to reconcile Plaintiff's different IQ scores.[70]   Defendant argues that there was substantial evidence to support the ALJ's findings.[71]

There is substantial evidence in the record supporting the classification of Plaintiff's condition as borderline intellectual functioning.   The record reveals that Dr. McLendon said Plaintiff's performance on the WRAT-R was at a mentally-retarded level[72] (not that Plaintiff was mentally retarded)[73] and diagnosed Plaintiff's condition as "DSM III-R V40.00 Borderline Intellectual Functioning."[74]   Furthermore, Dr. Jenkins used the same description

---

[68]     Tr. 34.

[69]     Memorandum in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, p. 3.

[70]     Id. at p. 13.

[71]     Defendant's Memorandum in Support of Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 17.

[72]     Tr. 123.

[73]     Plaintiff argues in his brief that Dr. McLendon found Plaintiff was mentally retarded.   However, the portion of Dr. McLendon's report quoted by Plaintiff only speaks to his achievement scores being at a retarded level, not that Plaintiff is mentally retarded.   Memorandum in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, p. 9.

[74]     Tr. 124.

14

for Plaintiff's condition, and indicated the condition was "V62.89 Borderline Intellectual Functioning."[75]  Since both physicians used the same description for the disorder, there is substantial evidence supporting the ALJ's determination that the disorder was borderline intellectual functioning.

The record shows that, although the ALJ deemed the condition borderline intellectual functioning, the ALJ nonetheless evaluated whether it fell within Listing 12.05 for Mental Retardation and determined that the condition was not severe enough to presume disability.[76]   Listing 12.05 requires that the condition be "initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Plaintiff argues that the ALJ failed to reconcile the three sets of IQ scores and that the lower scores (which were in the range of 60-70) should have been used to evaluate the Listing requirements.  The ALJ justified using the earlier, higher scores in evaluating Listing 12.05 because Plaintiff's "IQ should not have changed."[77]  There is substantial evidence on the record supporting this choice.  The scores relied upon by the ALJ were obtained when Plaintiff was

---

[75]    Tr. 139.

[76]    Tr. 32.

[77]    Id.

15

twenty years old,[78] that is, during the developmental period.  The
lower  scores  (which  are  more  favorable  to  Plaintiff  for  the
purposes of Listing 12.05) were obtained in 2000[79] and 2002,[80] six
and eight years after the developmental period, respectively.  The
ALJ  properly  relied  on  the  scores  obtained  during  the  end  of  the
developmental period to determine that Plaintiff's IQ was not low
enough during the developmental period to satisfy the requirements
of the Listing.[81]

     The caselaw pointed to by Plaintiff in support of using the
later, lower scores is not persuasive.  In Vazquez v. Barnhart, the
multiple  IQ  scores  were  all  obtained  during  the  developmental
period.  2005 U.S. Dist. LEXIS 22243, 16 (S.D.N.Y 2005).  In Muncy
v. Apfel,  the  claimant's  IQ  scores  were  all  obtained  after  the
developmental  period.    247  F.3d  728,  731  (8th  Cir.  2001).
Plaintiff's  case  is  clearly  different  because  his  first  scores  were
obtained during the developmental period, and the remaining scores
were obtained well after the developmental period ended.  The ALJ
did not need to reconcile multiple test scores because only one set

---

[78]     Tr. 32, 121.

[79]     Tr. 127.  While Dr. Jolly indicated that Plaintiff was twenty years
old at the time of examination, this is clearly erroneous considering the date
of the exam and Plaintiff's date of birth.  Plaintiff's age was twenty-eight
years at the time of the examination.

[80]     Tr. 135, 137.

[81]     Plaintiff does not qualify for criterion A since IQ testing was not
precluded by his condition, criterion B require a score under 59 which none of
his results satisfy, and finally criteria C and D require a score in the range
of 60-70. Because the ALJ relied on scores which were all higher than 70, the ALJ
properly concluded that the Listing was not satisfied.

was obtained during the relevant time period, and the validity of those scores had not been questioned.

Because substantial evidence supports the ALJ's reliance on the IQ scores reported by Dr. McLendon this court must affirm the ALJ's finding that the Plaintiff's mental condition is not severe enough to satisfy the Listing for mental retardation.

## C. Defective Hypothetical

The hypothetical posed by the ALJ asked the VE to assume that the person was illiterate, had no past work history, had the uncontested exertional limitations of standing, walking, sitting, and carrying recognized by the ALJ and that the individual would "be able to perform simple one- and two-step tasks."[82]   The VE testified that there would be a sufficient number of jobs for such a person in the regional or national economy, and identified three occupations (custodial work, domestic worker, and kitchen helper) that satisfied the hypothetical.[83]

Plaintiff's attorney then asked the VE whether jobs existed for someone with Plaintiff's age and education, who was illiterate, and who had poor "ability for attention and concentration and freedom from distractibility . . . ."[84]   The VE responded that he needed more information, and Plaintiff's attorney explained that

---

[82]      Tr. 186.

[83]      Id.

[84]      Tr. 187.

17

the person "could not maintain attention and concentration and freedom from distractibility in order to complete a task in a timely manner."[85]   The VE responded, "he probably wouldn't be competitive."[86]

The ALJ's findings suggest that he relied upon the testimony of the VE based on the hypothetical which did not contain the concentration limitation.[87]   Plaintiff argues, and this court agrees, that the ALJ's hypothetical was defective because limitations identified by the psychological experts were not included for consideration by the VE.[88]

"'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence'". Johnson, 864 F.2d at 343 (citing Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)).   In other words, when the ALJ's decision conflicts with some medical evidence in the record, the decision is only supported by substantial evidence if there is other medical evidence which supports the ALJ's position.

---

[85]     Id.

[86]     Id.

[87]     Tr. 35, Finding No. 11.

[88]     Memorandum In Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, page 15.

Dr. McLendon,[89] Dr. Jenkins,[90] and Dr. Hanna[91] all noted in their reports that there was a concentration limitation.   The only evidence in the record which explicitly contradicts the finding of a concentration limitation is a non-medical Field Office Disability Report[92] which indicated that "[t]here were no noticeable difficulties," and notably, that the Plaintiff had no difficulty reading or writing.[93]   Furthermore, the ALJ does not reference the report at all in his discussion of the findings.   Because the report is not explicitly given weight by the ALJ in his findings and it contradicts the clearly-supported finding that Plaintiff is illiterate, the report's evidentiary weight is not more than a scintilla.

On the record before this court, there is not substantial evidence supporting the ALJ's omission of the concentration limitation from the hypothetical question presented to the VE. Therefore, the hypothetical does not reasonably include all of Plaintiff's disabilities, thus constituting legal error.  Bowling, 36 F.3d at 436.  Furthermore, Plaintiff showed at the hearing that when the ALJ's hypothetical was modified to include a concentration

---

[89]     Tr. 122.

[90]     Tr. 137.

[91]     Tr. 141.

[92]     Tr. 105-07.  The report was prepared by "E. Frazier" and, unlike the other agency reports, does not contain any indication that it was prepared by a medical consultant.

[93]     Tr. 106.

19

limitation that would prevent Plaintiff from completing tasks in a timely manner, the VE changed his opinion, stating in that situation Plaintiff "probably wouldn't be competitive."[94]

In the present case, the hypotheticals posed to the VE are simply too vague to determine which limitations would prohibit Plaintiff from working. Therefore this case is remanded to the ALJ, who must include a concentration limitation in the hypothetical presented to the VE.

## IV.   Conclusion

Based on the foregoing, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment. This case is **REMANDED** to the ALJ for further proceedings consistent with this opinion.

**SIGNED** in Houston, Texas, this _16_ day of June, 2006.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[94]   Tr. 187.